# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**CLEOPHUS AMERSON,**
          **Petitioner,**

    v.                                         Case No. 05C0271

**CATHERINE J. FARREY,**
          **Respondent.**

---

## ORDER

Pro se petitioner Cleophus Amerson, a Wisconsin state prisoner, seeks a writ of habeas corpus challenging his conviction of two counts of first-degree sexual assault of a child after a jury trial in Milwaukee County Circuit Court. As grounds for relief, petitioner claims that: (1) his trial counsel was ineffective, and (2) the state courts denied him due process by refusing to grant him a new trial based on newly discovered evidence.

### I. PROCEDURAL HISTORY

The procedural history of the case is somewhat complicated, thus, I will briefly summarize it. In March 1994, a jury convicted petitioner of two counts of sexually assaulting his girlfriend Denise's nine year old daughter, Tawanda. In May 1994, petitioner moved for a new trial on the ground that Tawanda recanted her accusation against him. The trial court held a hearing and denied petitioner's motion. The court then sentenced petitioner to twenty years on each count to run consecutively. In March 1995, petitioner filed a motion for post-conviction relief, arguing that his trial counsel was ineffective and that he was entitled to a new trial based on newly discovered evidence. The trial court held a hearing and denied petitioner's motion. Petitioner appealed, and on September 17,

1996, the court of appeals affirmed his conviction and the denial of postconviction relief. Petitioner sought review in the state supreme court, and the court remanded the case to the court of appeals for further consideration in light of its decision in State v. McCallum, 208 Wis. 2d 463 (1997), which dealt with the recantation issue. The court of appeals remanded the case to the trial court for further consideration in light of McCallum. The trial court held a hearing and denied petitioner's motion for a new trial. Petitioner appealed, and on June 22, 1999, the court of appeals affirmed. The supreme court denied further review.

## II. FACTS

In its June 22, 1999 decision, the state court of appeals summarized the facts of the case as follows:

> At trial, Denise M., Amerson's girlfriend, testified that on the evening of December 20, 1993, Amerson and Denise's daughter, nine-year-old Tawanda M., walked to the store together. She testified that when they returned home from the store, Tawanda entered a few minutes before Amerson, and that Tawanda looked scared and hurt. Denise M. testified that she asked Tawanda what was wrong, but that before Tawanda could answer, Amerson entered. Denise M. then stopped questioning Tawanda. Denise M. testified that she waited until Amerson left and then she took Tawanda into the bathroom, out of the presence of Amerson's nephew [Robert Amerson], who was also at the home, and again asked her what was wrong. She testified that Tawanda was afraid to tell her what had happened. She testified that she then checked Tawanda's vaginal area and saw that Tawanda's vagina was red and swollen. Denise M. also testified that she saw a white fluid on Tawanda, and that the fluid smelled like semen.
>
> Denise M. testified that she then hugged Tawanda, told her that everything would be all right, and asked her what had happened. Tawanda told her that Amerson had touched her and hurt her. Denise M. testified that both she and Tawanda were crying during this exchange.
>
> Denise M. testified that Amerson returned about fifteen minutes later, and she then confronted him with what Tawanda had told her. She testified

2

that Amerson denied having had sexual contact with Tawanda, and that she and Amerson then got into a physical fight. Denise M. testified that she pulled a knife on Amerson, but that he overpowered her and got the knife away. She further testified that her son called the police, and Amerson then left the home. Denise M. chased him for a few blocks, but then returned home.

Officer Ivory Britton testified that []he went to Denise M.'s home to investigate the reported knife fight.[1] Denise M. was not home when Officer Britton first arrived, but when she returned, she told Officer Britton that Amerson had raped Tawanda. Officer Britton testified that []he then interviewed Tawanda outside her mother's presence and asked her what had happened. Officer Britton testified that Tawanda seemed terrified, and that she kept ducking her head down while she was talking. Officer Britton testified that Tawanda described penis-to-vagina intercourse, and said that Amerson did it to her. Officer Britton testified that Tawanda described another incident of penis-to-vagina intercourse with Amerson in addition to the one that occurred that evening. Tawanda told Officer Britton that the previous sexual assault occurred near the time she first moved into her home, around August of 1993, and that she had not previously told anyone of the previous assault because she was scared.

After Officer Britton spoke to Tawanda, []he took Tawanda and her mother to the hospital. At the hospital, Detective William Stawicki spoke to Tawanda. Tawanda told Detective Stawicki about the two sexual assaults by Amerson. Tawanda told Detective Stawicki that the first sexual assault occurred in the summer, inside a burned and abandoned house. Tawanda told Detective Stawicki that the second sexual assault occurred earlier that evening, on the way home from the store; she said that Amerson took her into a lot full of phone company trucks and sexually assaulted her.

Detective Stawicki testified that he drove Tawanda and her mother to the area near the store, and Tawanda identified the Warner Cable parking lot as the location of the sexual assault. Detective Stawicki testified that there was a fence surrounding the lot, and that Tawanda directed him to an opening in the fence through which they entered the lot. Tawanda then led Detective Stawicki to a spot between two trucks on the far south end of the lot and told him that the sexual assault occurred there. They then returned to the hospital and Tawanda was physically examined.

Dr. Ellen Klandrud testified that she examined Tawanda's genitalia and found two healed tears in Tawanda's hymenal ring that were consistent

---

[1] Officer Britton is male.

with a penetration on a prior date. She also testified that a portion of Tawanda's hymen was red and swollen, evidencing a recent trauma to the tissue.

Tawanda testified that on the evening of December 20, 1993, she went to the store with Amerson, and on the way home, Amerson took her into a parking lot full of gas company trucks. She testified that he took her between two trucks, pulled down her pants and underwear, and then his own pants and underwear, lay on top of her on the ground, placed his penis in her vagina, and moved back and forth on top of her. Tawanda testified that after the sexual assault they went home, where she told her mother that Amerson had raped her. Tawanda said that Amerson's nephew was present when she talked to her mother.

Tawanda testified that the previous sexual assault occurred a few months earlier, shortly after the school year had begun. She said that she went to a store with Amerson, and that, on the way home, he took her into a burned-up house, where he had penis-to-vagina sexual intercourse with her. Tawanda testified that Amerson threatened to kill her and her mother if she told anyone about the sexual assault.

The jury found Amerson guilty of both counts of sexual assault. Before sentencing, Amerson filed a motion for a new trial, asserting that Tawanda had recanted, and requesting a hearing on the matter. The motion asserted that, after trial, Tawanda, her uncle and her mother met with Amerson's attorney, who recorded the following conversation. Tawanda's uncle and her mother both said Tawanda told them that Amerson had not touched her. They then asked Tawanda whether Amerson touched her, and Tawanda said, "No." They also asked her whether anyone had forced her to say what she was saying, and whether what she was saying was the truth. Tawanda answered those questions, "No," and "Yes," respectively. In support of the motion, Amerson also filed an affidavit by Denise M., attesting to the foregoing information.

In response to Amerson's motion, the State stipulated that Tawanda had recanted as indicated in the motion, but asserted that Amerson was not entitled to a hearing on his motion for a new trial because he had not provided any corroboration for the recantation. The State also presented affidavits indicating that Tawanda was pressured into recanting. Specifically, the State offered an affidavit from Valerie Chambers, a counselor who had been assigned to Tawanda's case, and the presentence investigation report, which was written by Glenda Meeks. Meeks swore under oath that the information in the report was true.

4

Chambers's affidavit related that she spoke to Tawanda, Denise M., and Tawanda's uncle after they had spoken to Amerson's attorney. Both Denise M. and Tawanda's uncle told Chambers that they had visited Amerson in jail, and that he had professed his innocence to them. Chambers then spoke to Tawanda, and Tawanda told Chambers that Amerson did not touch her. When Chambers asked her why she previously said that he did touch her, Tawanda said she didn't know. Chambers then told Tawanda that it was important to tell the truth, and Tawanda began crying. Tawanda told Chambers that if she said it had never happened, they would let Amerson out of jail. She told Chambers that she had been to the jail to visit Amerson, and that her mother was sad because Amerson was in jail. Chambers then asked Tawanda what did happen on the day she first told her mother she had been raped, and Tawanda struggled with her explanation when she reached the point at which she and Amerson had been near the trucks; Chambers asked Tawanda to continue, but Tawanda looked at her tearfully and claimed that Amerson didn't do it. Chambers asked Tawanda how her genitalia had gotten hurt, and Tawanda said that she didn't know, and that she had fallen down. Chambers also asked Tawanda about the healed tears of her hymen, and Tawanda said that they had resulted from Amerson raping her at the abandoned house. Chambers again asked Tawanda about the later injury to her genitalia, but Tawanda said she didn't know how it happened, cried, and asked if they would let Amerson out of jail.

In the presentence investigation report, which was apparently prepared before Tawanda recanted, Meeks related that Tawanda's version of the two sexual assaults was consistent with her trial testimony. Meeks also related that Tawanda was having bad dreams about Amerson and his family trying to hurt her. Tawanda told Meeks that Amerson's family had warned her that something bad would happen to her if she did not help get Amerson out of jail, and that Amerson's family offered her things to encourage her to say that Amerson had not touched her. Meeks further reported that Denise M. said that she loved Amerson and was having trouble accepting what had happened. Denise M. also told Meeks that Amerson's family had been questioning Tawanda on a daily basis.

Amerson attempted to call Tawanda to testify regarding her recantation, but the trial court denied Amerson's request, and advised Amerson to make an offer of proof. The trial court also told Amerson to file additional affidavits to corroborate Tawanda's recantation, and gave Amerson additional time to file those affidavits. Amerson did not make an offer of proof regarding Tawanda's testimony. Amerson did, however, file additional affidavits in support of his request for a new trial, both before and after sentencing. Amerson also presented witnesses, whose testimony he claimed corroborated Tawanda's recantation.

Amerson presented an additional affidavit from Denise M., in which Denise M. stated that she pressured Tawanda into saying that Amerson sexually assaulted her "for her own personal reasons." Denise M. also related that Tawanda had been sexually assaulted when she was two years old, and that Denise M. believed that the healed injuries to Tawanda's hymen may have been caused by that assault. Amerson also presented medical records regarding the sexual assault to which Denise M. referred in her affidavit. At a hearing on Amerson's motion, however, Denise M. denied pressuring Tawanda into accusing Amerson of sexual assault. She testified that Tawanda may have felt pressured to say Amerson assaulted her because she questioned Tawanda about what was wrong and examined her genitalia.

Amerson also presented testimony from his nephew, who said that, on December 20, 1993, after Tawanda came home upset and went into the bathroom with her mother, he heard Denise M. whip Tawanda with a belt when Tawanda told her that nothing was wrong. Amerson further presented evidence that Tawanda told Amerson's mother she was sorry for what she said, but that her mother made her say it. Amerson again attempted to present Tawanda's testimony, but the trial court did not permit him to call her.

(Answer Ex. I at 2-7.)

I will state additional facts as necessary in the course of the decision.

### III. DISCUSSION

#### A.  Standard of Review

Petitioner filed his petition after the effective date of the AEDPA, thus its standards govern this proceeding.

Petitions seeking federal habeas relief are now governed by the familiar, and restrictive, rules spelled out in the Antiterrorism and Effective Death Penalty Act (AEDPA). A federal court may only grant relief under AEDPA if the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." In <u>Williams v. Taylor</u>, 529 U.S. 362, 405, 407 (2000), the Court explained that a state court decision is "contrary to" Supreme Court precedent if the "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. An

6

unreasonable application of Supreme Court precedent occurs when "the state court unreasonably extends a legal principle . . . to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." To be unreasonable, the decision of the state court must not be simply incorrect or erroneous, it must have been "objectively unreasonable."

A.M. v. Butler, 360 F.3d 787, 794-95 (7th Cir. 2004) (internal citations omitted).

As stated, petitioner asserts two claims. The first is a Sixth Amendment claim of ineffective assistance of trial counsel, based on counsel's failure to investigate a prior sexual assault involving the victim and his failure to present testimony from Robert Amerson. The second is a due process claim based upon the failure of the state courts to order a new trial based upon newly discovered recantation evidence.

**B.   Ineffective Assistance Claim**

Under Strickland v. Washington, 466 U.S. 668 (1984), to prevail on a claim of ineffective assistance, a habeas petitioner must prove that his trial counsel committed errors that fall outside the wide range of acceptable professional assistance and that the errors rendered the trial result unreliable. Id. at 687. Under the second prong of the test, the defendant must demonstrate actual prejudice – "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

In its decision of September 17, 1996, the state court of appeals resolved petitioner's ineffective assistance claim as follows:

> Amerson's second claim of error is that he was deprived of effective assistance of counsel. His claim is based on trial counsel's failure to

7

investigate the 1987 sexual assault that occurred in Chicago and his failure to present testimony from Robert Amerson.

To show ineffective assistance of counsel a defendant is required to prove both that his trial counsel's performance was deficient and that the deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Pitsch, 124 Wis. 2d 628, 633, 369 N.W. 2d 711, 714 (1985). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687. Both the performance and the prejudice components are mixed questions of fact and law. Pitsch, 124 Wis. 2d at 633-34, 369 N.W. 2d at 714. The trial court's findings of fact will not be disturbed unless clearly erroneous. Id. at 634, 369 N.W. 2d at 714-15. The ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law that this court reviews independently. Id. at 634, 369 N.W. 2d at 715. Review of the performance prong may be abandoned "if it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice." Strickland, 466 U.S. at 697. The burden is on the defendant under the prejudice test to show that the errors committed by counsel were so serious that they deprived him of a fair trial, a trial whose result is reliable. Id. at 687. In other words, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.

We shall first examine Amerson's ineffective assistance claim based on trial counsel's failure to investigate the 1987 assault. The trial court concluded that trial counsel's performance was indeed deficient because of his failure to investigate the prior assault. Nevertheless, it concluded the deficiency did not prejudice his defense. The trial court did not err.

As set forth earlier in this opinion, the trial court gave considerable weight to Tawanda's testimony because of its original consistency regardless of who interviewed her. Additionally, it determined that the 1987 Mount Sinai medical reports would not have altered the result of the trial. Again as noted earlier, since the 1987 report makes no mention of the type of injury to the hymenal ring as observed in Dr. Klandrud's report, the 1987 report is not even relevant. Thus, there was no prejudice to Amerson for his trial counsel's failure to investigate and obtain a report about the earlier incident.

Lastly, defendant claims ineffective assistance of counsel for failure to call Robert Amerson as a witness or ask for an adjournment for the same purpose. The trial court concluded there was no prejudice as a result of Robert Amerson's non-appearance because "Amerson's testimony did not significantly alter what occurred; specifically he never testified that Tawanda

8

> M[.] denied being sexually assaulted by [the defendant]." The record supports this finding by the trial court and provides a reasonable basis for its conclusion that there was not a probability that a different result would have occurred if an adjournment had been requested and Robert Amerson had testified.[2]
>
>> [2] Defendant argues in his brief that Robert Amerson testified "the victim originally denied to her mother that anything happened when she was with the defendant." The fact is that the victim simply did not respond to the question.

(Answer Ex. E at 10-12.)

Based on the evidence in the record, I cannot conclude that the state court of appeals's decision that petitioner failed to establish that his trial counsel was ineffective resulted from an unreasonable application of Strickland. With respect to his trial counsel's failure to investigate the 1987 assault, the determination made by the state trial court and affirmed by the court of appeals that such failure did not cause prejudice under Strickland is reasonable. The trial court, which had the opportunity to observe Tawanda testify, found her to be a credible witness. This finding itself undercuts the significance of the 1987 medical record. Further, the 1987 medical record did not controvert Dr. Klandrud's testimony that Tawanda's vaginal area showed evidence of recent sexual trauma. Moreover, as the state court of appeals indicated, the 1987 record does not support petitioner's contention that the 1987 assault caused the scarring that Dr. Klandrud observed on Tawanda's hymen. This is so because the 1987 record makes no mention of injury to the hymenal ring. Thus, the court of appeals's conclusion that petitioner's trial counsel's failure to present the 1987 record at trial did not prejudice petitioner was not based on an unreasonable application of Strickland.

With respect to Robert Amerson not testifying, the trial court credited the testimony of petitioner's trial counsel, Phil Berman, that on the second day of trial he had a telephone conversation with petitioner's stepfather, who said that he did not know where Robert Amerson could be found. The trial court also found that Berman made reasonable efforts to secure Robert Amerson's presence as a witness and that his failure to seek an adjournment when Amerson failed to appear did not constitute deficient performance. Petitioner provides no reason to find that this conclusion was unreasonable. It was not unreasonable for Berman not to request an adjournment when Robert Amerson's family did not know where he was. This is particularly true because, as I discuss below, Robert Amerson's testimony was of marginal, if any, value to petitioner.

The trial court also found that petitioner was not prejudiced by counsel's failure to produce Robert Amerson as a witness. It based this finding on the fact that Robert would not have testified that Tawanda denied that petitioner assaulted her. The state court of appeals affirmed this finding, stating that the record supported the conclusion that Robert's testimony would not have changed the outcome of the case. Petitioner provides no reason to find that this conclusion was unreasonable.

**C.    Due Process Claim**

Petitioner claims that the refusal of the state courts to grant him a new trial based on newly discovered evidence denied him due process. With respect to granting a new trial, the state court of appeals, in its June 22, 1999 decision, held as follows:

> The trial court properly applied the standard announced in McCallum, and determined both that Tawanda's recantation was not sufficiently corroborated and that there is not a "reasonable probability that a jury, looking at both the accusation and the recantation, would have reasonable

10

> doubt as to [Amerson's] guilt." McCallum, 208 Wis. 2d at 474, 561 N.W.2d at 711. The circumstances surrounding Tawanda's recantation strongly support the trial court's implicit finding that she was pressured into the recantation. Moreover, Tawanda's recantation did not explain why she originally accused Amerson if he was not guilty, and did not explain how she was injured. As noted, Amerson did not make an offer of proof that extended beyond, or differed from, Tawanda's statement. Additionally, although Tawanda's mother asserted by affidavit that, for personal reasons, she pressured Tawanda into saying Amerson sexually assaulted her, she never identified those reasons, and, when called to testify, she denied that she told Tawanda to accuse Amerson of sexually assaulting her.
>
> The trial testimony, on the other hand, indicated that Tawanda consistently described to several people two instances of Amerson sexually assaulting her – once in an abandoned house, and once in a parking lot. Tawanda was also able to show the police the parking lot where Amerson sexually assaulted her, the opening through which to enter the fenced-in lot, and the specific place in the lot where she was assaulted. Further, a physical exam of Tawanda revealed that a portion of Tawanda's hymen was red and swollen, evidencing a recent trauma to the tissue. Moreover, the circumstances under which Tawanda revealed the sexual assaults, and Denise M.'s initial reaction when she learned that Amerson assaulted Tawanda, as established by the trial testimony, lend additional credibility to Tawanda's accusation. Considering both the trial testimony regarding Tawanda's accusation and the totality of the evidence regarding Tawanda's recantation, the trial court did not erroneously exercise its discretion in determining that there was no reasonable probability that a new trial would result in Amerson's acquittal.

(Answer Ex. I at 10-12.)

The problem with this claim is that the existence of newly discovered evidence that is relevant only to a petitioner's guilt or innocence, rather than to the deprivation of a constitutional right, generally cannot be reviewed by a federal court on a petition for habeas relief. Townsend v. Sain, 372 U.S. 293, 317 (1963). "[A] refusal to grant a new trial on the basis of newly discovered evidence is not actionable in habeas corpus." Guinan v. United States, 6 F.3d 468, 470 (7th Cir. 1993), overruled in part on other grounds by Massaro v. United States, 538 U.S. 500 (2003). The evidence must bear upon a constitutional right

11

guaranteed to the petitioner. Id.; see also Herrera v. Collins, 506 U.S. 390 (1993). Although petitioner has a constitutional right to be tried fairly, he does not have a right to a particular result. Coogan v. McCaughtry, 958 F.2d 793, 801 (7th Cir. 1992). When newly discovered evidence is presented in the form of a recantation, a habeas petitioner is unlikely to prevail unless he can show that the prosecutor knew that false testimony was being presented or that his counsel was ineffective. Id. In the present case, petitioner argues that Tawanda's recantation called into question the credibility of her trial testimony. However, he makes no claim that the prosecutor knowingly presented false testimony, that his counsel was ineffective in dealing with the recantation evidence or that any specific constitutional right of his was violated. Because petitioner claims only that the newly discovered evidence cast doubt on Tawanda's credibility, he is not entitled to federal habeas relief. Finally, for essentially the same reasons provided by the state court of appeals, petitioner's newly discovered evidence is not so compelling that it would result in a miscarriage of justice to deny him a new trial. the state courts reasonably concluded that Tawanda may have been pressured into recanting, and that there was no reasonable probability that a new trial would result in acquittal.

## IV.  CONCLUSION

For the reasons stated,

**IT IS ORDERED** that petitioner's application is **DENIED,** and this case is **DISMISSED.**

Dated at Milwaukee, Wisconsin this 29 day of June, 2006.

/s_____
LYNN ADELMAN
District Judge

13